The opinion of the Court was delivered by
Crabb, J.
Three questions have been raised at the bar in this case: —
1st. Whether the County Court had jurisdiction of the offence charged in the indictment ?
2d. Whether the Attorney-General, on the part of the State, has a right to an appeal in the nature of a writ of error to this Court, under the circumstances of this case ?
3d. Whether the Circuit Court erred in arresting the judgment, and discharging the defendant ?
1st. As to the first question, That the County Court have jurisdiction of all misdemeanors, of what kind soever, of an inferior nature to felony, had, we thought, long been considered settled in North Carolina and this State ; such we understand to have been the contemporaneous, general, and for many years past the unquestioned, construction of the Statutes of 1777 and 1794. And it is believed the construction is correct, were it now to be made for the first time.
2d. But it is to be ascertained, secondly, whether the State, by the instrumentality of the proper officer, can bring a cause of this character to this Court by appeal, in the nature of a writ of error.
The act of Assembly of 1811, ch. 72, § 11, providing for [140] this mode of proceeding, is general and unlimited in its terms ; it speaks of either party in any suit, and' certainly embraces the State as fully as the defendant in a criminal case; to which latter it has, in practice, been held to apply, unless, indeed, there be something in the nature of a State prosecution, which withdraws the State from the operation of this Act. We know of no reason which should produce this result. The only unsettled question in the case is, whether judgment should be arrested or pronounced on the verdict of the jury. All that this Court can do is, either to affirm what was done by the Judge below, or to reverse it, and then to proceed to enter up judgment upon the finding of the jury below. There can be no reexamination of the merits of the case.
3d. The remaining question is, as to the correctness of the course pursued by the circuit judge. He would enter no judgment on thé verdict of the jury. Ought he to have done so? They found the defendant “not guilty of extortion, but guilty of oppressively suing out the execution.” To discover what it is of which the jury find the defendant guilty, we must recur to the indictment. That extortion is the crime for which the defendant was intended to be indicted and convicted; that all else, save the charge of extortion, was inserted by way of introduction or inducement to *491 that charge, no one who shall attentively examine the indictment will hesitate to believe; nor is it less evident that the only crime set forth is the crime of extortion. It is undoubtedly the general rule, as laid down on the part of the State, subject to some exceptions, that it is sufficient to prove so much of the indictment as shows that the defendant has committed a substantial crime, therein specified. 2 Campbell, 584, 645, 646. The defendant cannot object to being punished for the crime of which he is found guilty, because he was also charged of another of which he is found innocent. And it is immaterial (subject to the exceptions before alluded to) whether the distinct offences be presented in the form of separate counts, or united in the same indictment.
But the question still recurs: is the defendant in this instance [141] found guilty of a crime ? The allegation in the indictment, exclusive of the charge of extortion, is in substance, “ that he, being constable, fraudulent!)', unlawfully, oppressively, and injuriously, and with force and arms, and by color of his said office, did obtain from a justice of the peace a fieri facias in favor of Joseph Taylor against Knight and others, which was founded upon a judgment recovered, &c.” and upon which the plaintiff himself had received the amount due, &c. The finding of the jury is, “ that he did oppressively sue out the writ of fieri facias.” If we for a moment free ourselves from the impression made by the words “fraudulently, unlawfully,” “ force” and “arms,” &c. contained in the indictment, and the word “ oppressively,” which alone is found in the verdict, the alleged crime dwindles down into a harmless statement; that an individual, who is said to be a constable, obtained a fieri facias in favor of an indifferent person, against an indifferent person, which was founded upon a regular judgment, and that by virtue of it, the plaintiff had received his money.
But the jury say he did it oppressively. It may be remarked that the word “ oppressively ” is a word of very vagué import, upon which alone to found the judgment of a court. It may be applied with propriety to crimes of enormous magnitude ; but may be applied with equal propriety to acts which, though blamable, cannot be regarded as crimes. A man may act very oppressively in the performance of an act for which no human law will punish him. But however expressive this word may be deemed, can it be seriously contended that the use of an epithet of this description will supply the want of an averment of facts ? Is it not a rule, than which none is better established, that an indictment must contain a certain description of the crime, and a statement of the facts by which it is constituted ? 1 Chitty, Crim. Law. 169.
It is the only safe rule in reference to indictments, and in no case could the application of the rule be more obviously necessary than in the present “ that the special manner of the whole fact ought to be set forth with such certainty that it may judicially appear to the Court that the indictors have *492 [142] not gone upon insufficient premises. And where the act in itself is not necessarily unlawful, but becomes so by its peculiar circumstances and. relations, the matters.must be set forth in which its illegality consists.” 2 Hawkins, P. C. book 2, ch. 25, § 57, which of itself is decisive of this case; see also Rix v. Horne, 2 Cow. Rep. 682; 1 Chit. Crim. Law, 227-229.
Now it is certainly not necessarily unlawful for a constable to take out a writ of fi. fa., as before stated. It is said though he did it oppressively. But how did he make it operate oppressively ? Set forth the matters in which the oppression consisted. Let the defendant know what crime he is called upon to answer. Let the Court see such a definite offence on record that they may be' able to apply the judgment and punishment which the law prescribes. Let the defendant be so charged that his conviction or acquittal may insure his subsequent protection, should he be again questioned on the same ground. Give us the facts, which together constituted the act oppressive, unlawful, &c. not in detail; not the evidence relied upon ; but succinctly and in substance. 1 Chit. C. L. ubi supra.
It is unnecessary to enlarge upon this subject. There is not room for a doubt as to the correctness of the judgment of the Circuit Court.
It may not be amiss to observe that we do not wish to be understood as questioning the liability of officers of this kind to conviction and punishment, both for acts of malfeasance and nonfeasance. It will be time enough, however, for us to aid in producing this result, when juries shall have' convicted them of the facts. Nor do we wish to be understood as requiring, or sanctioning the necessity of an unusual or unreasonable certainty in an indictment. We are mindful that the strictness anciently required in indictments has been regarded by the ablest and best jurists and- judges “ as a blemish and inconvenience in the law.” Further than we are bound by stubborn and insurmountable precedents, we are not disposed to go, in favoring any overstrained and unseemly niceties.
Judgment affirmed.